# Dr. Frederick Gaertner, Appellant, *v.* William A. Heyl and Thomas McCaffrey.

*Criminal law—Alteration of lease—Forgery — Malicious prosecution—Probable cause.*

Forgery is the fraudulent making or alteration of a writing to the prejudice of the right of another, and it is not committed where A signs a lease to B and sends it by his agent to get B's signature, and B makes alteration in it before he signs it and returns it to the landlord's agent. Even if the alterations be made to mislead A's agent, it will not afford A who refuses to agree to the changes and insists on the original form of lease, probable cause to prosecute B for forgery.

Argued Oct. 30, 1896. Appeal, No. 95, Oct. T., 1896, by plaintiff, from judgment of C. P. No. 3, Allegheny Co., May T., 1895, No. 347, on verdict for defendants. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Trespass for malicious prosecution. Before PORTER, J.
The facts appear by the opinion of the Supreme Court.

The letter of the alderman referred to in the opinion of the Supreme Court was as follows :

"SAMUEL F. KERR, Alderman, 3536 Butler Street.

"Real Estate and Insurance.        Collections of all kinds.

"PITTSBURGH, April 8th, 1895.

"Dr. Gaertner,

"Dear Sir : Mr. Thomas McCaffrey has left two leases with me for you to sign before 12 o'clock to-day. If said leases are not signed at that time, suit will be instituted against you. There is no desire on my part to put you to any trouble or expense and for this reason I write you this note so you may have a chance to avoid any unpleasant consequence.

"Yours Respectfully,

"Answer by bearer.        "SAMUEL F. KERR."

The court charged in part as follows :

Dr. Gaertner had been a tenant of Mr. Heyl, or of an estate which was represented by Mr. Heyl. They had been negotiating with regard to the making of a new lease along prior to April 1, 1893. No lease had been made, that is executed, and no terms agreed upon prior to the first day of April, 1893, and Dr. Gaertner had had notice to quit in accordance with the law ; therefore he was there as a tenant at will or by sufferance. Mr. Heyl called upon Mr. McCaffrey and employed him for the purpose of having this lease put in shape, or of arranging the matter with Dr. Gaertner. They then wrote two leases, that is; a lease in duplicate, and Mr. Heyl signed both. At that time this covenant with regard to which all this controversy has arisen provided that the lessees should pay the water rent and do certain other things. With the leases in this condition, Mr. McCaffery took them, having had one or two interviews before that with Dr. Gaertner, and left them with the doctor, who retained them for one day, or two days, and on a certain evening Mr. McCaffery went to the doctor's office and in his company at that time was a man named John Morrow ; the three were in the office ; they all agree on this. Dr. Gaertner testifies that they had some conversation there about this lease, that he told Mr. McCaffrey that Mr. Heyl wasn't treating him right,

that he did not want to covenant to make these repairs, and that after some talk with Mr. McCaffrey, McCaffrey saying that he would get $10.00 if this lease was closed up, that he said, "Well, I will fix it;" that he took the leases, and in McCaffrey's presence made this change and then signed the lease, gave it to McCaffrey, and that McCaffrey thanked him and went away. Now, gentlemen, if he made the alteration in McCaffrey's presence, then, so far as McCaffrey was concerned—that is, made it in his presence so that McCaffrey saw it, so far as McCaffrey was concerned, that would not be probable cause.

McCaffrey says that there was nothing said about an alteration at the time by Dr. Gaertner and that he did not know there was any alteration; and you will remember what the testimony of Mr. Morrow was upon this point. Mr. Heyl was not there. Of course he is to be judged in this case by what he knew. [Although you should find from the evidence that McCaffrey saw Gaertner make this change and knew it was made, if he went to Heyl and told him that Gaertner had done it surreptitiously, and put the lease upon him in such a way as to show an intent to take advantage of the alteration thus secretly made, then Heyl would have to be judged as acting upon what McCaffrey told him, and in such a case, although McCaffrey might not have probable cause to make such a charge, if he misrepresented things to Heyl, and Heyl was deceived thereby, then Heyl would have probable cause.] [3] So that you see you might be called upon to find in favor of one of these defendants and against the other. You will at once perceive that the evidence as to what occurred at the time this lease was signed by the doctor is very important, and that you should consider it very carefully. As to what was done just at that time, it is important that you consider every particle of the evidence that would lead you to a proper conclusion. If the doctor took the pen and in the presence of McCaffrey, so that McCaffrey could see, made that change in the presence of the agent of Heyl, for McCaffrey was the agent of Heyl for that purpose, and then signed the lease, McCaffrey knowing that the change was made, then, if McCaffrey afterwards went to a lawyer and misstated the facts, the opinion of the lawyer would be no protection; there would be no probable cause as far as McCaffrey was concerned, although he might give Heyl probable

cause by misrepresentation, if Heyl in good faith acted on his representation. [But if the doctor altered these leases after Mr. Heyl had written his name there, and then having altered them, signed them when McCaffrey, the agent of Heyl, came there, and passed over to McCaffrey this lease without saying anything about it, with the intention of misleading McCaffrey as to the condition of that paper, and so misleading Heyl, that would afford probable cause for the making of the charge which was here made, and in case you so find, you would simply say that you found for the defendants and say no more.] [4]

Defendants' points and answers thereto among others were as follows:

7. It is immaterial whether the alteration was made before the plaintiff signed the lease, the same having been executed by the defendant Heyl. *Answer:* This point is affirmed. [1]

6. If the jury believe from the evidence that the plaintiff made the alterations in the lease, admitted to have been made without the knowledge or consent of the defendant, McCaffrey, without informing him of his action, there was probable cause for the defendants bringing the information. *Answer:* If you find from the evidence that the plaintiff received the lease after it had been signed by Heyl and made the alterations in the part changed, and signed the lease, concealing from McCaffrey that he had made the change, and then returned the lease to McCaffrey, concealing from him the fact that there had been any change on the lease, that would be probable cause for the prosecution. [2]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were (1–4) above instructions, quoting them.

*Thomas M. Marshall,* with him *A. G. Smith,* for appellant.— The law will not suffer a man to use unlawful means to effect even a just object: Prough v. Entriken, 11 Pa. 85; Schmidt v. Weidman, 63 Pa. 173; Schofield v. Ferrers, 47 Pa. 196.

*J. E. O'Donnell,* with him *Joseph Breil,* for appellees.—Forgery is the false and fraudulent making or altering of an instrument which would, if genuine, apparently impose a legal liability on another, or change his legal liability to his prejudice.

It includes as well the unsuccessful attempt as the accomplished fraud : 1 Bishop's Criminal Law, sec. 572.

To constitute the crime, (*a*) the making or alteration must be false, (*b*) it must be with intent to defraud, (*c*) the instrument, as made or altered, must be of apparent legal efficiency to impose a liability, or in case of alteration to prejudicially change a liability, (*d*) the alteration must therefore be material : Clark's Criminal Law, sec. 292.

OPINION BY MR. JUSTICE WILLIAMS, January 4, 1897 :

William A. Heyl was the landlord of the plaintiff, and McCaffrey, the other defendant, was the agent and collector for Heyl. In the Spring of 1893, and shortly before the close of the then current year, Heyl had a new form of lease prepared, changing the terms, and somewhat increasing the burdens of the tenancy of Gaertner. This was brought to the plaintiff's office by McCaffrey who requested him to sign it. This the plaintiff refused to do. Other interviews were had between them in which the agent insisted that the new lease must be signed, and the plaintiff as stoutly insisted that he would not sign it. At length McCaffrey left with the plaintiff a copy of the new lease, signed by Heyl, and gave notice that he should call for it within a day or two, and that it must be signed. When he next called the plaintiff says he took down the lease from a pigeon hole, changed its terms to make them conform to those of the old lease, signed it and handed it to McCaffrey, who took it and went out. When Heyl received it he refused to accept it and within two or three days had a prosecution instituted before a justice of the peace against Gaertner for forgery. The affidavit on which the warrant issued was made by McCaffrey.

When the case reached the grand jury the indictment was returned not a true bill and the costs were imposed by them on the prosecutor. Some time afterwards this action was brought against the defendants for malicious prosecution. Upon a showing of the facts now stated it became the duty of the defendants to show that they had probable cause for the prosecution for forgery. For this purpose they relied on the fact that an alteration was made in the lease while it was in Gaertner's hands and on the advice of an attorney, that the alteration of

the paper was a forgery. As there was no denial that the alteration was made before the signing by Gaertner, and the delivery of the paper to McCaffrey, it was contended that the alteration was not a crime of any sort, but the exercise of a clear legal right; that the paper did not become a contract until he had signed it, and that whether he would sign it as it was presented to him, or insist upon such change in its terms as would give it the same effect as the lease then existing, was for him to determine.

Upon this question the defendants' counsel asked the learned trial judge to instruct the jury that " it is immaterial whether the alteration was made before the plaintiff signed the lease, the same having been executed by Heyl." This point was affirmed. Whatever the learned judge may have intended by this answer, it was calculated to lead the jury to believe that in the judgment of the court the alteration in the terms of the lease by the tenant at any time after it had been signed by Heyl was a forgery. Forgery is the fraudulent making or alteration of a writing to the prejudice of the right of another. The proffered lease was not a contract till signed by the tenant and delivered to the landlord or his agent. The landlord had no rights under it against anybody. It was of no more value to him than so much blank paper until the tenant had assented to its provisions by executing it. It was a proposition to let the rooms to Gaertner on the conditions named in the paper. This proposition he distinctly declined, and modified it in accordance with his own ideas of what it should be. As so modified he signed it and sent it to Heyl. This did not bind Heyl until he accepted it. It was a proposition by Gaertner to rent the rooms on the terms stated in the modified lease which Heyl was at liberty to refuse, and as it seems did refuse. The change made by Gaertner in the terms of the lease was not a forgery. It did not affect the rights of the landlord in the slighest degree, and the jury should have been distinctly instructed to that effect.

The fourth assignment of error must also be sustained. In the portion of the charge embodied in this assignment the learned judge instructed the jury that the change in the form of the lease, if made after Heyl had signed it and with a view to mislead McCaffrey, would afford probable cause for charging Gaert-

ner with the crime of forgery. This was clearly error. It might, upon the circumstances assumed, have shown a dishonest purpose, but it did not show a forgery, or disclose any reason for charging such a crime upon the tenant. On the contrary the letter of the justice by whom the warrant was issued, written on the morning before the warrant was issued, looks very much as though the prosecution had been resorted to to compel compliance by the tenant with the wishes of the landlord, and secure the execution of the new lease in the form in which it had been originally presented to him. If the jury should so believe, this would afford proof of malice and justify a verdict in favor of the plaintiff.

No question as to the effect of the advice of counsel is raised by the assignments of error, and we are not called upon to consider that branch of the defense made in this case. Ordinarily the first step in an attempt to show probable cause for charging a crime upon a particular person is to show the commission of the particular crime by some person, and then give the circumstances which seemed to connect the person proceeded against with the crime so committed. Thus if A should prosecute B for robbery, and failing to establish his guilt should be sued for malicious prosecution, he would show the fact of the robbery, and the reasons that led him to believe that B was the robber. But if he failed to prove that he had been robbed, it is not easy to see how he could show probable cause for the prosecution of B for a crime that had not been committed. But in this case it may be that an honest belief that a forgery had been committed, if reached after such examination and inquiry as a reasonably prudent man should make before assailing the character of his neighbor, would stand in the place of the crime itself for the purposes of this case. Whether this be so or not is a question not raised in this record. The third assignment is also sustained. No man has a right to launch a criminal prosecution against another upon the circumstances stated in the instruction complained of in this assignment. McCaffrey's statements to Heyl that Gaertner had imposed upon him in the matter of the lease, is not probable cause for charging the crime of forgery upon Gaertner. It is a circumstance that, connected with others, would be competent to put in evidence, but standing alone, it is not enough. It did not furnish probable cause.

The judgment is reversed and a venire de novo awarded.